UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOEL LOZADA #369951,

    Plaintiff,

v.

ERIC CHANG,

    Defendant.
_____/

Case No. 2:23-cv-00011

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment. (ECF No. 21.)

Plaintiff state prisoner Joel Lozada filed an unverified complaint under 42 U.S.C. § 1983, asserting an Eighth Amendment violation against Defendant Dr. Chang. Lozada says that while he was housed in Marquette Branch Prison (MBP), Dr. Chang failed to provide him with proper medical care for 17 days after he injured his shoulders on January 17, 2022.

Dr. Chang filed a motion for summary judgment arguing that Lozada cannot support his deliberate indifference claims. The Court is sympathetic to Lozada because he experienced significant pain after sustaining his shoulder injuries. Nevertheless, in the opinion of the undersigned, there exists no genuine issue of material fact supporting Lozada's Eighth Amendment claims against Dr. Chang. Accordingly, it is recommended that the Court grant Dr. Chang's motion for summary

judgment and dismiss this case. Dr. Chang provided appropriate treatment and care for Lozada by providing pain medications, a shoulder sling, and ordering shoulder x-rays. After the shoulder x-rays, Dr. Chang ordered Lozada transported to the hospital for further treatment. Lozada cannot establish a violation of his Eighth Amendment rights under either the objective or subjective components of a deliberate indifference claim.

It is respectfully recommended that the Court grant Dr. Chang's motion for summary judgment and dismiss this case.

## II. Factual Allegations

Lozada says that on January 17, 2022, he passed out from a seizure and awoke on his cell bunk in extreme pain. (ECF No. 1, PageID.6.) A nurse came to see Lozada at his cell, but he refused pain medication, because he believed he needed to go to the hospital. (*Id.*) On January 18, 2022, Lozada says that Defendant Dr. Chang visited him at his cell, and Lozada told Dr. Chang about his shoulder pain. Dr. Chang responded that Lozada's shoulders looked "squared off," offered pain medication, and indicated that he would order an x-ray. (*Id.*)

On January 20, 2022, LPN Heatington noticed bruising from Lozada's shoulder to his elbow and indicated that she would put in a note for him to see a doctor. (*Id.*) Lozada responded that he needed to go to the hospital. (*Id.*) On January 28, 2022, Dr. Chang visited Lozada at his cell. (*Id.*) Lozada told Dr. Chang that he was in excruciating pain and had not slept for 10 days. (*Id.*)

On February 2, 2022, Lozada received the x-ray and learned that his left shoulder had an anterior bilateral dislocation and a humeral head fracture, and the bruising was caused by bone marrow. (*Id.*) Lozada says that Dr. Chang was surprised because he thought Lozada was faking it. (*Id.*) Lozada was taken to the Marquette Hospital and says that staff told him they did not know how he survived for 17 days with the injuries that he had sustained. (*Id.*)

Lozada asserts that Dr. Chang violated his right to be free from cruel and unusual punishment by denying him proper medical attention for 17 days while he suffered from a right anterior bilateral shoulder dislocation, a left anterior bilateral shoulder dislocation, and a humeral head fracture. (ECF No. 1, PageID.7.)

### III. Relevant Medical Records

After Lozada sustained injuries, he was assessed cell-side by RN Kelly on January 18, 2022. (ECF No. 21-1, PageID.99-101.) Lozada rated his pain as 9/10 and believed that he dislocated his shoulders. (*Id.*) That same day, Dr. Chang examined Lozada at his cell for bilateral shoulder dislocations due to an unwitnessed seizure. (*Id.*, PageID.102-105.) Dr. Chang noted shoulder pain, ordered x-rays, found no dislocation of the shoulders, ordered Naproxen 500 mg for pain, and instructed Lozada to continue use of Tylenol at night. (*Id.*, PageID.104.) Dr. Chang noted that Lozada should be monitored due to "seizures." (*Id.*)

On January 20, 2022, LPN Heatington, while passing out medication, observed bruising on back side of Lozada's shoulder area and noted that Lozada continues to complain of pain with limited range of motion. (*Id.*, PageID.106.) RN Hewitt

3

indicated on January 23, 2022, that the bruising was getting worse and ordered Lozada an ice pack. (*Id.*, PageID.107.)

On January 24, 2022, Dr. Chang examined Lozada in the housing unit. (*Id.*, PageID.108-111.) Dr. Chang noted that Lozada stated that the pain was better, but that he had increased bruising on the left arm, could not take his shirt off, felt pressure when raising his arms, could not reach the light to turn it on, and could not lay on his side due to the pain. (*Id.*, PageID.108.) Dr. Chang felt that the right shoulder pain could be due to an AC joint separation and noted that the scheduled x-ray would confirm a diagnosis. He ordered Tylenol 325 mg tablets to be taken twice a day, a short course of Tramadol – two tablets per day until January 29, 2022 – to help with pain, and a shoulder sling. (*Id.*, PageID.110, 112.) Dr. Chang encouraged movement of Lozada's left shoulder to prevent adhesive capsulitis. (*Id.*, PageID.113.)

Lozada received shoulder x-rays on February 2, 2022. (*Id.*, PageID.114-117.) The x-rays showed anterior inferior glenohumeral dislocation and Hill-Sachs deformity with avulsion of the tuberosity. (*Id.*) Lozada was then taken to the U.P. Health System Marquette Emergency Department to assess his bilateral shoulder dislocations and left proximal humerus fracture. (*Id.*, PageID.118-119.)

The next day, Lozada underwent surgical procedures to close both his right and left shoulder dislocations. (*Id.*, PageID.126-127.)

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V. Eighth Amendment – Deliberate Indifference

Lozada asserts that Dr. Chang acted with deliberate indifference to his pain for 17 days after he injured his shoulders. (ECF No. 1, PageID.7.) Lozada says that he injured his shoulder on January 17, 2022, and he was not sent to the hospital emergency room until February 2, 2022. (*Id.*, PageID.6.) Lozada says that he was in constant pain and the improper treatment he received from Dr. Chang before he was sent to the hospital was cruel and unusual punishment. (*Id.*)

5

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Where a prisoner challenges their treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, a prisoner must prove grossly inadequate care which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of

6

serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

In the opinion of the undersigned, Lozada cannot support his Eighth Amendment claims under either the objective or subjective components. As to the objective component, Lozada asserts that Dr. Chang failed to provide "proper medical attention for 17-days." (ECF No. 1, PageID.7.) Lozada received medical care after he sustained injuries, and he was treated with pain medications that included

7

Naproxen, Tylenol, and Tramadol. (ECF No. 21-2, PageID.199 (Dr. Chang's affidavit).) Lozada was seen by nurses and by Dr. Chang before he was sent to the hospital. (ECF No. 21-1, PageID.99-113.) Dr. Chang ordered x-rays, which revealed the seriousness of Lozada's injuries. (*Id.*, PageID.104.) Immediately after the x-ray was taken, Dr. Chang ordered staff to transport Lozada to the hospital. (*Id.*, PageID.114-119.)

As stated above, the seriousness of Lozada's injuries is not enough to support the objective component of an Eighth Amendment claim. Lozada received medical care in the prison. He claims that the care he received was improper, but to support that claim Lozada must provide some medical evidence showing that the treatment he received was "cursory", amounting to no treatment at all, or so grossly inadequate that Dr. Chang consciously disregarded Lozada's serious medical need. *Phillips*, 14 F.2d 55-36. This evidence is usually provided in the form of expert medical testimony. *Id.* This is because a prisoner should not be able to "prove an Eighth Amendment claim more easily that an ordinary individual could prove a malpractice claim." *Id.*, at 535.

First, the medical evidence establishes that Dr. Chang and prison healthcare staff provided Lozada with more than cursory medical care. Pain medication was provided. (ECF No. 21-2, PageID.199 (Dr. Chang's affidavit).) Lozada received an icepack for bruising, a shoulder sling, and x-rays were ordered. (*Id.*) The medical evidence shows that nothing improper was done by healthcare staff or Dr. Chang. Lozada has not presented any evidence, such as expert medical evidence that

8

contradicts the conclusion that he received proper care by prison staff. In the opinion of the undersigned, Lozada has failed to satisfy the objective component.

As to the subjective component, Lozada cannot support his claim that Dr. Chang acted with deliberate indifference. As explained, Lozada was treated by Dr. Chang and prison healthcare staff. Lozada received pain medications, an icepack, a shoulder sling, and Dr. Chang ordered x-rays to evaluate his injuries. Dr. Chang first examined Lozada on January 18, 2022, a day after the injury. (ECF No. 21-2, PageID.199 (Dr. Chang's affidavit).) Dr. Chang ordered Naproxen 500 mg for 30 days and an x-ray of Lozada's shoulder. (*Id.*) Dr. Chang also instructed Lozada to continue to use Tylenol as needed. (*Id.*)

Dr. Chang next evaluated Lozada on January 24, 2022. (*Id.*) Dr. Chang noted increased bruising on Lozada's left arm, and that Lozada said he could not take his shirt off. (*Id.*) Lozada reported that his pain was better but that he felt pressure when he moved his arms. (*Id.*) Dr. Chang ordered Lozada to stop taking Naproxen because he was taking too many Naproxen pills which caused increased bruising. (*Id.*) Dr. Chang ordered both Tylenol 325mg, and Tramadol 50 mg for pain. (*Id.*) Lozada's received shoulder x-rays on February 2, 2022. (*Id.*) Based on the x-rays results, Dr. Chang ordered Lozada's transport to the hospital for further treatment. (*Id.*) The factual evidence shows that Lozada cannot establish the subjective component of an Eighth Amendment claim.[1]

---

[1] Dr. Chang and prison healthcare staff continued to provide Lozada with medical care and treatment post-surgical repair of his shoulder. (ECF No. 21-2, PageID.199-201; ECF No. 21-1, PageID.141-197.) Lozada's lawsuit is not based

9

In the opinion of the undersigned, there exists no genuine issue of material fact entitling Dr. Chang to summary judgment on Lozada's Eighth Amendment claim.

## VI. Recommendation

Accordingly, it is respectfully recommended that the Court grant Dr. Chang's motion for summary judgment and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   March 1, 2024                         /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U.S. MAGISTRATE JUDGE

---

upon the care that he received after he was treated at the hospital on February 2, 2022.